# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EMMA L. ELLISON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-232-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Emma L. Ellison requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-seven years old at the time of the administrative hearing (Tr. 64). She has a high school education, and has worked as a jailer and a dispatcher (Tr. 64, 83). The claimant alleges that she has been unable to work since February 1, 2014, due to congestive heart failure, costochondritis, insomnia, thyroid removal, depression, anxiety, panic disorder, asthma, seizure disorder, Grave's disease, Hashimoto's disease, back problems, and a left shoulder tumor (Tr. 229).

## Procedural History

On June 3, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 197-205). Her applications were denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 15, 2016 (Tr. 15-27). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), but must take seizure precautions including

avoiding hazards such as heights and open flames (Tr. 20). The ALJ also found that the claimant could perform simple, repetitive tasks, could relate to supervisors and co-workers on a superficial basis, and should not work with the public (Tr. 20). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, mail clerk and bench assembler (Tr. 25-26).

## Review

The claimant contends that the ALJ erred by failing to: (i) account for the marked limitation in her ability to understand, remember, and carry out detailed instructions as set forth by the state agency psychologists; and (ii) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). The Court agrees, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of obesity, seizure disorder, migraines, major depressive disorder, and generalized anxiety disorder; that she had the non-severe impairments of thyroidectomy and tachycardia; and that her back and neck pain were not medically determinable (Tr. 17-18). The relevant medical records as to the claimant's mental impairments reveal that she established care with primary care physician, Dr. Azzam Almounajjed, on September 11, 2013 (Tr. 591-92). She reported that she was taking the highest dose of anti-thyroid agent without response and needed thyroid surgery, was anxious, having tremors, and had recently lost weight (Tr. 591). Dr. Almounajjed diagnosed the claimant with, *inter alia*, generalized anxiety disorder, noting

her anxiety was secondary to her thyroid issues (Tr. 591). At a follow-up appointment on March 26, 2014, the claimant reported she was anxious, stressed, and depressed (Tr. 587). Dr. Allmounajjed diagnosed the claimant with, *inter alia,* generalized anxiety disorder and endogenous depression (Tr. 587). By August 2014, Dr. Almounajjed indicated that the claimant's anxiety and depression were better, and the claimant consistently reported that her depression was better through April 10, 2015 (Tr. 618, 658-69). However, at a follow-up appointment on August 25, 2015, the claimant reported very frequent panic attacks and worsening depression, and Dr. Allmounajjed referred her to psychiatry (Tr. 682-83).

On September 22, 2015, Dr. Robert Hensley conducted a psychiatric examination of the claimant (Tr. 650-51). He noted the claimant was cooperative; had linear, logical, goal-directed, and coherent thoughts; had average intellectual functioning; was oriented to person, place, time, and situation; and had a euthymic mood and full affect (Tr. 651). He diagnosed the claimant with major depressive disorder, recurrent episode, severe, and generalized anxiety disorder (Tr. 651).

Additionally, the claimant was diagnosed and treated for anxiety and/or depression by some of her specialists. On September 16, 2013, the claimant underwent a total thyroidectomy and parathyroid re-implant surgery (Tr. 337-38). At a post-op appointment on September 19, 2013, Dr. Timothy Robinson noted the claimant used "very, very large doses of analgesics" post-surgically and had significant anxiety (Tr. 339). He diagnosed her with Grave's disease, hypocalcemia secondary to hypoparathyroidism, and anxiety (Tr. 339). Likewise, the claimant's neurologist, Dr. Laura Buck, diagnosed her with

-5-

anxiety state, unspecified, and depressive disorder, not elsewhere classified, on May 12, 2014, and prescribed a seizure medication that would also stabilize her mood (Tr. 608).

On July 30, 2014, state agency psychologist Diane H, Psy.D. completed a Psychiatric Review Technique form, and found that the claimant's mental impairments consisted of affective disorders and anxiety-related disorders, and that she was moderately impaired in the functional categories of maintaining social functioning, and maintaining concentration, persistence, or pace, and mildly impaired in activities of daily living (Tr. 95-96). Dr. H also completed a Mental RFC Assessment ("MRFCA") and found in the first section that the claimant was markedly limited in her ability to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public (Tr. 99-101). In the written comments section, Dr. H wrote that the claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could adapt to a work situation, but could not relate to the general public (Tr. 101). These findings were affirmed on review (Tr. 127-28).

At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with the following limitations:

> She can occasionally lift and carry twenty pounds, briefly ten pounds. Stand and/or walk at least six hours in an eight-hour work day, sit at least six hours. This individual requires seizure precaution that is avoid hazards, heights, and open machinery and was limited to simple repetitive tasks that relate to supervisors and coworkers only superficially and not work with the public. And when I say relate to supervisors, coworkers only superficially, I mean a job not requiring direct or frequent supervision . . . where coworkers might be around but the individual wouldn't have to work together with them to accomplish tasks or be part of a team. So think of a job that would illustrate that [such as] work in a glass factory taking glass bottles off an assembly line

-6-

and coworkers might be around but they wouldn't have to work together to accomplish tasks or be part of a team.

(Tr. 84). The VE identified that the claimant could perform the jobs of mail clerk, DICOT § 209.687-026; and bench assembler, DICOT § 780.684-062 (Tr. 85).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence in the record. He gave the greatest weight to the state agency psychologists' opinions, finding they were balanced, objective, and consistent with the evidence of record as a whole (Tr. 23). The ALJ determined the claimant's RFC as set forth above, and then adopted the VE's testimony that she could perform the jobs of mail clerk and bench assembler (Tr. 20, 26).

The claimant argues that the ALJ failed to properly assess the state agency psychologists' opinions, despite giving them the greatest weight. Specifically, she contends that ALJ failed to account for their finding that the claimant was markedly limited in her ability to understand, remember, and carry out detailed instructions because his RFC failed to account for the level of detail the claimant could perform. Social Security Ruling 96–6p instructs that the ALJ "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians and psychologists." 1996 WL 374180, at *4 (July 2, 1996). These opinions are to be treated as medical opinions from non-examining sources. *Id.* at *2. Although the ALJ is not bound by a state agency physician's determination, he cannot ignore it and must explain the weight given to the opinion in his decision. *Id. See also Valdez v. Barnhart,* 62 Fed. Appx. 838, 841 (10th Cir. 2003) ("If an ALJ intends to rely on a non-examining

-7-

source's opinion, he must explain the weight he is giving it.") [unpublished opinion], *citing* 20 C.F.R. § 416.927(f)(2)(ii). Here, although the ALJ found the claimant could perform simple, repetitive tasks with superficial contact with co-workers, supervisors, and no contact with the general public, he did not acknowledge the state agency psychologists' findings related to the claimant's ability to perform detailed work (Tr. 20). *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. Furthermore, the Tenth Circuit has found that an ALJ cannot ". . . turn a blind eye to moderate Section I limitations. . . . [I]f a consultant's [MRFCA] narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or *if it contradicts limitations marked in Section I*, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin,* 600 Fed. Appx. 616, 619 (10th Cir. 2015). And here, the state agency psychologists found marked limitations, not moderate, which bolsters the claimant's argument even further.

The Commissioner contends that the jobs identified at step five nonetheless account for any inability to understand, remember, and carry out detailed instructions. The Court, however, finds that the jobs identified *do not* account for those limitations with regard to the reasoning level requirements. The job of mail clerk, DICOT § 209.687-026, has a

-8-

reasoning level of 3, which requires a worker to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." The job of bench assembler, DICOT § 780.684-062, has a reasoning level of 2, which requires a worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions" [emphasis added]. The reasoning level best identifies the level of simplicity (or, conversely, complexity) associated with a job. *See Cooper v. Barnhart,* 2004 WL 2381515, at *4 (N.D. Okla. Oct. 15, 2004) ("The reasoning level, as identified by Plaintiff, appears more similar to whether or not a claimant has a limitation to performing only simple tasks.") [citations omitted]. If a claimant is limited to simple tasks, it stands to reason that a job requiring the ability to understand and carry out detailed but uninvolved written or oral instructions would create a conflict. *See McKinnon v. Astrue,* 2010 WL 3190621, at *5 (D. Colo. Aug. 12, 2010); *Allen v. Barnhart,* 2003 WL 22159050, at *10 (N.D. Cal. Aug. 28, 2003) (examining the requirements of the GED reasoning level of 2 and finding that "[t]he need to follow 'detailed' and 'involved' instructions exceeds the ALJ's limitation of plaintiff to 'simple, routine tasks.' Such instructions are not simple and uncomplicated, or limited to one or two steps."). "[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel,* 196 F.3d 1084, 1091 (10th Cir. 1999). *See also Krueger v. Astrue,* 337 Fed. Appx. 758, 760–762 (10th Cir. 2009) (reversing and remanding in part because the ALJ failed to resolve a conflict

between VE's testimony and DOT job descriptions); *Poppa v. Astrue,* 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that SSR 00–4p "requires that an ALJ must inquire about and resolve any conflicts between a [VE's] testimony regarding a job and the description of that job in the [DOT]"); *Hackett v. Barnhart,* 395 F.3d 1168, 1175 (10th Cir. 2005) (applying *Haddock* to nonexertional limitations). Furthermore, "[t]he [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. The ALJ did neither in this case.

The Court notes the Commissioner's reference to *Rom v. Colvin*, 2016 WL 3528059, at *3 (N.D. Okla. June 23, 2016), in which the United States Magistrate Judge found that "[t]he vocational expert, not the court, has the expertise to interpret the information in the DOT," *citing Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007). But here, the ALJ failed to ask the VE to reconcile this conflict or clarify how the DOT could be applied to the claimant's mental limitations, and the ALJ therefore committed reversible error in violation of this Circuit's holding in *Haddock*. In the Tenth Circuit, this apparent inconsistency is reversible error. *See Hackett*, 395 F.3d at 1176 (10th Cir. 2005) (finding a limitation to simple and routine work tasks "inconsistent with the demands of level-three reasoning," and reversing "to allow the ALJ to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the VE."). *See also Ward v Colvin*, 2015 WL 9438272, at *3 (W.D. Okla. Sept. 17, 2015) (slip op.) ("The Court declines to find, as urged by the Commissioner, that to the extent GED reasoning

levels are not specific mental or skill requirements, they can be disregarded when addressing the mental demands of jobs listed in the DOT.").

Although the unresolved conflict as to the claimant's mental limitations would have been harmless error if other jobs had been identified that did not pose a conflict, it is not harmless here because the only two jobs identified had reasoning levels of 2 or 3. *See Stokes v. Astrue,* 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding that any error on whether claimant could perform jobs was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

For the reasons set forth above, the Court concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for proper analysis of the medical opinions of record. If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 7th day of September, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**